IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CONSEULO P. TABB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:11-cv-53 |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Consuelo Tabb ("Tabb") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding her not disabled and therefore ineligible for both supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, ("Act"), 42 U.S.C. §§ 1614(a)(3)(A), 1381-1383f.

Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda and argument of counsel and the applicable law, and conclude that the Administrative Law Judge ("ALJ") erred by failing to consider a state agency medical consultant's Residual Functional Capacity Assessment. I also find that evidence submitted after the ALJ's decision is new, material, and should be considered by the ALJ. As such, I **RECOMMEND DENYING** the Commissioner's motion for summary judgment (Dkt. # 17), **GRANTING IN PART** Tabb's motion for summary judgment (Dkt. # 14), and reversing and remanding this case for further administrative consideration consistent with this Report and Recommendation.

## **STANDARD OF REVIEW**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Tabb failed to demonstrate that she was disabled under the Act. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Tabb bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education and work experience. *See* 42 U.S.C. §§ 423(d)(2) and 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the

2

Case 6:11-cv-00053-NKM-RSB   Document 21   Filed 10/31/12   Page 2 of 18   Pageid#: 818

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Tabb was born on July 18, 1956 (Administrative Record, hereinafter "R." 249). Tabb's date last insured is December 31, 2008. Thus, Tabb must show that her disability began before that date, and existed for twelve continuous months to receive DIB benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a). To receive SSI benefits, Tabb must establish that her disability began on or after the date she applied for benefits. 42 U.S.C. § 1383(a)(1); 20 C.F.R. § 416.501. Tabb has a two year degree in business administration. (R. 66.) Tabb's past relevant employment includes working as an administrative assistant from 1994-2003, which was skilled, sedentary work (R. 90), and working as a newspaper carrier from

3

2003-2005, which was light, unskilled work. (R. 90.)  The ALJ found that Tabb has not engaged in substantial gainful activity since October 31, 2005, her alleged disability onset date. (R. 20.)

Tabb reported that during the relevant period she had the capacity to prepare sandwiches and soups for meals.  She rarely drives a car, and cannot perform any housework or laundry. (R. 383-84.)  She reported that her neck and back pain is made worse with sitting, standing and even laying down.  She has difficulty turning her head, and cannot look at a computer screen for more than 5-10 minutes.  Tabb also has difficulty looking down, and cannot sit for more than 5-10 minutes.  She reported that her carpal tunnel syndrome makes it difficult to do things like peeling potatoes, address cards, and open jars.  She stated that she uses a cane when she walks, and lies down most of the day. (R. 72-84.)

## Claim History

On January 26, 2007, Tabb initially filed an application for SSI and DIB, claiming that her disability began on October 31, 2005, due to problems with her back, high blood pressure, numbness in her feet and toes, and leg and arm tingling (the "First Claim"). (R. 249.)  The state agency denied her application at the initial and reconsideration levels of administrative review. (R. 157, 164.) On January 9, 2009, Administrative Law Judge Charles Boyer held a hearing, at which Tabb was unrepresented. (R. 98.)  On February 26, 2009, the ALJ entered his decision denying Tabb's claims for DIB and SSI. (R. 129.)  Tabb appealed this decision to the Appeals Council.

On February 27, 2009, Tabb filed a new claim for DIB and SSI (the "Second Claim"). On June 12, 2009, the Commissioner found Tabb to be disabled as of February 27, 2009, based on a

4

residual functional capacity determination by state agency medical consultant Thomas Phillips. (R. 143-151.)

On March 9, 2010, the Appeals Council vacated the denial of benefits for the First Claim, re-opened the June 16, 2009 award of benefits for the Second Claim, consolidated both claims, and remanded them for a second hearing (the "Consolidated Claim"). (R. 153-55.) The Appeals Council specifically directed the ALJ to seek existing updated treating source evidence, including further clarification about Tabb's functional capacity given her impairments; to evaluate the effects of Tabb's obesity; to give further consideration to Tabb's maximum residual functional capacity during the entire period at issue; and, if warranted by the record, to obtain supplemental evidence from a vocational expert to determine whether Tabb has any skills that are transferable to other occupations, using hypothetical questions that reflect the specific capacity/limitations established by the record as a whole. (R. 154-55.)

On June 29, 2010, the ALJ held a hearing on the Consolidated Claim at which Tabb was represented by counsel, and included testimony from medical expert Christopher Alexander III, M.D., and vocational expert Ashley Wiles. (R. 46-94.) On August 9, 2010, the ALJ entered his decision denying Tabb's Consolidated Claim for DIB and SSI. (R. 18-31.) The ALJ found that Tabb's degenerative disc disease, diffuse idiopathic skeletal hyperostosis ("DISH" disease)[1] and obesity were severe impairments. (R. 20.) Considering these impairments, the ALJ found that Tabb retained the RFC to perform a limited range of sedentary work. Specifically, the ALJ limited Tabb to lifting and carrying 20 lbs occasionally and 10 lbs frequently; sitting for 30

---

[1] DISH disease is calcification or a bony hardening of ligaments in areas where they attach to the spine. The condition causes stiffness in the upper back and may also affect the neck and lower back. DISH often causes no symptoms, though stiffness and pain along affected ligaments can occur. Symptoms of DISH include stiffness, pain, loss of range of motion, and difficulty swallowing or hoarse voice. Complications could include loss of range of motion in joints, difficulty swallowing, and paralysis. There is no cure for DISH. Treatment includes pain management, physical therapy, and surgery for severe complications. See Diffuse Idiopathic Skeletal Hypertosis (DISH), http://www.mayoclinic.com/health/diffuse-idiopathic-skeletal-hyperostosis/DS00740

minutes consecutively, for a total of 4 hours in an 8 hour day; and walking for 20 minutes consecutively, for a total of 2 ½ hours in an 8 hour day.  The ALJ found that Tabb is limited to tasks that involve no more than occasional kneeling, crawling or balancing.  She is unable to climb scaffolding and should avoid unprotected heights and moving machine parts. (R. 22.) Given the evidence obtained from the vocational expert at the hearing, the ALJ determined that Tabb can perform her former position as an administrative assistant, and is not disabled under the Act. (R. 30.)

On September 15, 2010, Tabb submitted to the Appeals Council a Physical Residual Functional Capacity Questionnaire completed by her treating physician, Benjamin Brown, M.D., on August 30, 2010. (R. 747.)  On August 25, 2011, the Appeals Council denied Tabb's request for review. (R. 7.)  On September 15, 2011, Tabb submitted to the Appeals Council a letter from Dr. Brown dated September 14, 2011.  On October 13, 2011, the Appeals Council again denied Tabb's request for review, and this appeal followed. (R. 1-4.)

## Medical Evidence

Tabb was being treated by Dr. Brown for back pain when she initially filed the First Claim in January 2007.  On March 21, 2007, consultative examiner Thomas Dobyns, M.D., completed a Medical Consultant Report and found that Tabb was capable of sitting for 6 hours of a standard workday and standing for 6 hours of a standard workday, and found that she could lift 25 lbs occasionally and 10 lbs frequently. (R. 442-43.) Dr. Dobyns also recommended reduced stooping, bending, kneeling, crouching, and crawling because of Tabb's lumbar spine pain and obesity. (R. 442.)

6

On March 14, 2008, an X-ray of Tabb's lumbar spine showed multilevel degenerative changes, with prominent anterior osteophytosis at multiple levels. (R. 526.) Tabb continued to see Dr. Brown throughout the spring of 2008 for low back pain, Type 2 diabetes and hypertension. (R. 671, 975.) On June 17, 2008, Tabb was evaluated by physical therapist Janet Ngai. Tabb reported that she had pain in her lumbar, thoracic and cervical spine. Ngai noted that Tabb had a 15-20 minute tolerance for sitting and standing. On physical exam, Ngai noted tenderness down Tabb's lumbar spine on the right. (R. 531.)

On October 29, 2008, Tabb visited Dr. Brown, and complained of pain in her whole spine. She reported difficulty sleeping, standing and walking. Dr. Brown noted that Tabb moved very slowly, and was tender to very light touch down the entire length of her spine. Dr. Brown referred Tabb to UVA's physical medicine and rehabilitation center ("PM&R"), and recommended that she walk daily. (R. 529.)

In December 2008, Scott Chirichetti, D.O., with PM&R, diagnosed Tabb with DISH, based on a bone scan that showed extensive degenerative changes in Tabb's spine, and which corresponded with prior X-ray and MRI findings. Dr. Chirichetti recommended physical therapy, and noted that inactivity will increase the likelihood that Tabb will continue to lose range of motion in her spine and overall functioning. (R. 578-79.) On the same date, Vincent Artlet, M.D., evaluated Tabb for her DISH syndrome. She reported continuous, whole spine pain, difficulty swallowing, numbness and tingling in her arms and hands, leg spasms, and pain with transitions. Dr. Artlet noted that Tabb was able to heel and toe walk without difficulty using ambulatory aids, and she had a very limited range of motion of her low and mid back secondary

7

to back discomfort. Otherwise, Tabb's exam was fairly benign. Dr. Artlet recommended that Tabb continue receiving physical therapy. (R. 573-74.)

On January 16, 2009, Jonah Fox, M.D., evaluated Tabb for complaints of intermittent, bilateral hand numbness, noting that her symptoms are aggravated by cooking and alleviated with shaking hands. On exam, Dr. Fox found that Tabb had decreased cervical range of motion with pain on rotation, and full strength in all major muscle groups. Dr. Fox performed a nerve conduction study and determined that Tabb had moderate right carpal tunnel syndrome, and mild left carpal tunnel syndrome. (R. 568-70.) On January 16, 2009, Tabb underwent a swallowing function study, which found osteophytic changes that resulted in significant narrowing and anterior deviation of the esophagus, beginning at the C5 level. (R. 564-65.)

Tabb continued to seek treatment with Dr. Brown and PM&R for her DISH syndrome in 2009 and 2010. Her treatment mainly consisted of pain medicine and physical therapy. On January 29, 2009, Susan Miller, M.D. with PM&R noted that Tabb was uncomfortable sitting and needed to lie down on the exam table because of pain. (R. 562.) On April 1, 2009, Dr. Brown noted that Tabb's pain is constant and progressive. On physical exam, Dr. Brown noted that Tabb is in apparent pain, and that simply shifting positions was painful. (R. 686.)

On June 12, 2009, state agency medical consultant Thomas Phillips completed a physical residual functional capacity assessment for Tabb. He found that Tabb can carry 10 lbs occasionally, and less than 10 lbs frequently, stand/walk for a total of 2 hours, and must periodically alternate standing and sitting to relieve pain and discomfort. He found that Tabb needs to lie down frequently to relieve back pain, which cannot be accommodated by normal breaks. (R. 148.)

8

On January 25, 2010, Tabb began receiving trigger point injections from Dr. Miller. Dr. Miller noted that Tabb ambulated with a cane, and appeared to have discomfort with any position changes and preferred to lie down. (R. 740.) Tabb continued to receive trigger point injections from January through May 2010, which she reported helped her pain, although she still complained of pain throughout her neck and back. (R. 718, 731.) On June 10, 2010, Dr. Brown wrote a letter to Tabb's attorney, stating that Tabb has a very severe case of DISH, which leads to early, widespread and severe arthritic pain that is not amenable to treatment. Dr. Brown stated that Tabb has followed all instructions and been cared for closely through the pain clinic. (R. 39.)

Dr. Hayden Alexander reviewed Tabb's medical records and testified as a medical expert at the evidentiary hearing at the request of the ALJ. Dr. Alexander testified that Tabb's back impairment limits her to a modified range of sedentary work. Dr. Alexander found that Tabb is able to stand for 30 minutes consecutively for a total of 4 hours in an 8 hour workday, and walk for 20 minutes consecutively, for a total of 2 ½ hours in an 8 hour day. He found that she could sit for an unlimited period of time, and did not limit her ability to use her hands for manipulation and grasping. (R. 55.) The vocational expert testified that an individual limited to sedentary work, who can stand for 30 minutes to an hour, and alternate between standing and sitting, can perform Tabb's former job as an administrative assistant. (R. 91.)

On September 15, 2010, over a month after the ALJ's August 9, 2010 decision, Tabb submitted to the Appeals Council a Physical Residual Functional Capacity Questionnaire completed by Dr. Brown on August 30, 2010. In the RFC, Dr. Brown estimated that Tabb can sit for 10-15 minutes before needing to get up, and stand for 10-15 minutes before needing to sit

9

down. He noted that Tabb must walk every 10-15 minutes for 10 minutes at a time, and that she must be able to shift positions at will from sitting, standing or walking. He stated that Tabb will need unscheduled breaks every 10-15 minutes for at least 10-15 minutes at a time. Dr. Brown limited Tabb to lifting/carrying less than 10 lbs occasionally, and 10 lbs or more rarely. He stated that Tabb must keep her head in a static position, and has significant limitations with reaching, handling or fingering. Finally, Dr. Brown noted that Tabb's condition is permanent and will progress. (R. 748-52.)

On September 14, 2011, Dr. Brown wrote another note to Tabb's attorney, stating that Tabb does not need to show muscular atrophy to be diagnosed with carpal tunnel syndrome. He also stated that Tabb's complaints of constant neck pain, difficulty turning her head, difficulty looking downward, difficulty with prolonged sitting and standing and difficulty with full grip strength are all reasonably consistent with his observations and record of her as a patient. Dr. Brown noted that Tabb's treatment has been conservative and routine, which is the only appropriate treatment for someone in her condition. (R. 756.)

## ANALYSIS

Tabb argues that the ALJ erred by 1) improperly discrediting her complaints of pain; 2) failing to consider the opinion of state agency medical consultant Thomas Phillips; 3) failing to give her treating physician opinion controlling weight; and 4) finding no limitations on Tabb's handling or grasping. After a careful review of the record as a whole, the court finds it appropriate to remand this case to the Commissioner under sentence four of 42 U.S.C. § 405(g).

### Failure to Consider Opinion of State Agency Medical Consultant

There is no question that Tabb suffers from, among other things, carpal tunnel syndrome,

and DISH, a severe disorder that causes arthritic type pains in her neck and back. The issue is to what extent these conditions restrict Tabb's ability to function, and whether this severe impairment renders Tabb totally disabled from all forms of substantial gainful employment. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

The record contains conflicting medical opinions as to Tabb's functional limitations. Specifically, the record contains physical RFC reports completed by Dr. Dobyns (March 2007), Dr. Johnson (April 2007), Dr. Hartman (September 2007), Dr. Phillips (June 2009), Dr. Alexander (June 2010) and Dr. Brown (August 2010).

In his August 9, 2010 opinion, the ALJ considered Dr. Dobyns' opinion, but gave it little weight because Dr. Dobyns "did not have the opportunity to review significant evidence which was received after the formulation of his opinion." (R. 29.) The ALJ also considered Dr. Hartman's opinion, but gave it little weight because Dr. Hartman also did not consider the full record. (R. 30.) The ALJ referenced Dr. Brown's treatment notes, and specifically rejected Dr. Brown's statements that Tabb is disabled, finding that his opinion is not supported by the longitudinal record and physical findings, and because disability is an issue that is reserved to the Commissioner. The ALJ also discounted Tabb's allegations with regard to her level of incapacity, stating that they are not supported by the evidence of record, and by her essentially routine and conservative treatment. (R. 30.) The ALJ gave Dr. Alexander's opinion great weight, finding it consistent with the evidence of record. (R. 29.) The ALJ did not refer to, or appear to consider, the RFC reports completed by Dr. Johnson or Dr. Phillips in his opinion.

Evidence from a non-examining source, such as a state agency physician or medical consultant, is considered opinion evidence and must be given weight according to the amount of

11

relevant evidence the medical source presents to support the opinion. 20 C.F.R. §§ 404.1527(e), 416.927(e). Although the ALJ is not bound by a state agency medical consultant's findings, state agency medical consultants are highly qualified physicians who are experts in Social Security disability evaluation. Social Security Ruling ("SSR") 96-6p. Therefore, the ALJ must consider their findings and opinions, and explain the weight given to their opinions. 20 C.F.R. §§ 404.1527(e), SSR 96-6p.

While the ALJ's decision states that he considered the opinions of the "state agency physicians," he only cited to and specifically referenced the opinions of Drs. Dobyns and Hartman. (R. 29-30.) There is no mention of the opinions rendered by Dr. Johnson or Dr. Phillips. Dr. Johnson's opinion is no more limited than that of Dr. Alexander; thus the ALJ's failure to specifically consider it is harmless error. "Errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error. See Austin v. Astrue, 2007 WL 3070601, *6 (W.D.Va. Oct.18, 2007) (citing Camp v. Massanari, 22 Fed.Appx. 311 (4th Cir.2001)) (citing Newton v. Apfel, 209 F.3d 448, 458 (5th Cir.2000)).

However, Dr. Phillips' findings differ from and are more restrictive than those of Dr. Alexander and the other state agency physicians. Dr. Phillips limited Tabb to lifting/carrying 10 lbs occasionally and less than 10 lbs frequently. He found that she could stand and walk for a total of 2 hours in an 8 hour day. Dr. Phillips also noted that Tabb needs to change positions and lay down frequently, in a manner that cannot be accommodated by normal breaks.

Dr. Phillips' RFC was the basis for the Commissioner's award of SSI and DIB to Tabb in June 2009. When the Appeals Council consolidated Tabb's claims, it specifically noted that the

12

opinion Dr. Phillips developed as part of the Second Claim is "contrary to the decision of the Administrative Law Judge, it must be evaluated in light of the rest of the evidence of record." The Appeals Council gave specific instruction to the ALJ on remand to consider Tabb's maximum residual functional capacity, evaluate the treating and nontreating source opinions and nonexamining source opinions, and "explain the weight given to such opinion evidence." (R. 154.)

The ALJ either did not understand the clear direction of the Appeals Council or simply refused to follow its mandate. The ALJ did not mention Dr. Phillips' opinion in his decision, or consider the limitations that Dr. Phillips found impeded Tabb's vocational abilities. The failure of the ALJ to consider Dr. Phillips' opinion and explain the weight given to it as is required by 20 C.F.R. 404.1527(e), 416.927(e) and SSR 96-6p is clear error. Given that the very state agency opinion that the ALJ chose to ignore supported the Commissioner's finding of disability in 2009, I cannot find the ALJ's failure to consider Dr. Phillips' opinion to be harmless error. Accordingly, I recommend that the case be remanded under sentence four of 42 U.S.C. § 405(g) for consideration of Dr. Phillips' opinion.

## Additional Evidence Submitted to Appeals Council

Tabb argues that the ALJ erred by giving the medical expert's opinion more weight than that of her treating physician, Dr. Brown. The ALJ did not have the benefit of Dr. Brown's August 30, 2010 RFC assessment ("Dr. Brown's RFC report"), or his November 14, 2011 letter when formulating his decision. The Appeals Council made this evidence a part of the record, but found that it provided "no reason to review the Administrative Law Judge's decision." (R. 1-4, 7-11.) When deciding whether to grant review, the Appeals Council must consider evidence

submitted to it, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Id. Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id.

When the Appeals Council denied Tabb's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. As such, this court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings. Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991.) Upon a review of the record as a whole, I find that Dr. Brown's RFC report is new, material, relates to the period before the ALJ's decision, and should be considered by the ALJ.

Dr. Brown relates his opinions stated in the August 30, 2010 RFC report back to "at least" April 14, 2008. Thus, it clearly relates to the period on or before the date of the ALJ's decision.

Dr. Brown's RFC report also constitutes "new" evidence. Dr. Brown's treatment records were reviewed by the ALJ; however, as with most medical records, Dr. Brown's treatment notes contain the history that he received from Tabb, his findings on physical exam, and his treatment recommendations. The medical records do not include Dr. Brown's assessment of Tabb's specific functional limitations. Although several of Dr. Brown's records state his opinion that Tabb is "disabled," as the ALJ noted, the determination of disability is reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Dr. Brown's medical records did

14

not include the opinions contained in his RFC report, specifically as it relates to Tabb's functional limitations due to her severe impairments; thus Dr. Brown's RFC is new evidence.

Dr. Brown's RFC report is also material. Dr. Brown's RFC assessment is considerably more restrictive than that of Dr. Alexander and the state agency physicians mentioned in the ALJ's opinion. Dr. Brown's RFC is more similar to that of Dr. Phillips. In particular, Drs. Brown and Phillips both found that Tabb must be able to shift positions at will from sitting, standing and walking, and take unscheduled breaks every 10-15 minutes during the workday. (R. 148, 750.)

The Commissioner argues that Dr. Brown's RFC is immaterial because it is not supported by the record as a whole. The Commissioner also asserts that Dr. Brown's opinion that Tabb cannot stand for more than 10-15 minutes is inconsistent with progress notes which show that she had normal muscle strength and tone, and with the recommendation of Tabb's physicians that she exercise.

The fact that Tabb's physicians recommended that she walk and exercise does not mean that Tabb has the ability to walk and exercise. In fact, in 2008, Dr. Chirichetti specifically noted that inactivity will increase the likelihood that Tabb will continue to lose range of motion in her spine and overall functioning. (R. 578-79.) Further, Dr. Brown's RFC report is not undermined by Tabb's normal muscle strength and tone. Dr. Brown's report does not state that Tabb is unable to move. If that were the case, Tabb's lack of muscle atrophy would contradict Dr. Brown's opinion. Instead, Dr. Brown states that Tabb **must** move; that she must be able to shift positions often, and at will, at least every 10-15 minutes due to pain. This limitation is supported by Tabb's treatment records as a whole, which show that she has consistently complained of pain

15

in her neck and back. Additionally, Tabb's physical exams reveal that she has reduced range of motion and tenderness in her neck and back, and difficulty ambulating. (R. 527, 531, 537, 562, 573, 578, 598, 671,682, 684, 686, 718, 731, 733, 737, 740.) I therefore find that Dr. Brown's RFC report is material.

The Appeals Council remanded this case to the ALJ in March 2010, with instructions to seek existing updated treating source evidence concerning Tabb's impairments, specifically additional evidence of the treating physician about what Tabb can still do despite her impairments. (R. 154.) Dr. Brown is Tabb's long-standing treating physician. The Commissioner's regulations state that such a treating physician is in the best position to evaluate the extent of a claimant's pain and its effect on her ability to function. 20 C.F.R. § 404.1527(c)(2), 416.927(c). Dr. Brown's RFC puts exact numbers on the extent to which Tabb's ability to function is limited.

This case is similar to Meyer v. Astrue, where the Fourth Circuit remanded the case to the ALJ for further fact finding. In Meyer, the ALJ denied plaintiff's claim, noting that the record lacked restrictions placed on the plaintiff by a treating physician. The plaintiff subsequently obtained that evidence from his treating physician and submitted it to the Appeals Council. The Appeals Council made the evidence a part of the record, but denied review. The Court remanded the case to the Commissioner with instructions that the ALJ consider the new evidence stating, "[o]n consideration of the record as a whole, we simply cannot determine whether substantial evidence supports the ALJ's denial of benefits here….no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record. Assessing the probative value of competing evidence is

16

quintessentially the role of the fact finder….Therefore, we must remand the case for further fact finding." 662 F.3d 700, 707 (4th Cir. 2011).

Similarly in this case, no fact finder has made any findings as to Dr. Brown's opinion or attempted to reconcile his RFC report with the conflicting and supporting evidence in the record. "The duty to resolve conflicts in the evidence rests with the ALJ, not with the reviewing court." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)(citing Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993)). Rather, the court is charged with reviewing the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Wilkins, 953 F.2d at 96. Given this record, I cannot determine whether the Commissioner's decision is supported by substantial evidence. Accordingly, I recommend that this case be remanded to the ALJ with instructions to consider the opinion of Dr. Phillips and the additional evidence submitted by Dr. Brown after the June 29, 2010 hearing.

As noted above, Tabb also alleges that the ALJ erred in this case by improperly discrediting her complaints of pain, and by finding no limitations on her handling and grasping ability. The ALJ's credibility determination and RFC are based upon his review of the record and the weight that he places on the medical opinion evidence. Having concluded that the ALJ erred by failing to consider the opinion of Dr. Phillips and the additional evidence provided by Dr. Brown, it necessarily follows that on remand, the ALJ must reexamine his credibility analysis and recommended RFC. It is therefore recommended that the defendant's motion for summary judgment be **DENIED**, Tabb's motion for summary judgment be **GRANTED IN PART**, and this case be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g).

17

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: October 31, 2012

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge